IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 26-90118 |
| iCRYO BRANDS, LLC, et al. | § | |
| | § | Chapter 11 |
| DEBTORS.[1] | § | |
| | § | (Jointly Administered) |

**AGILE LENDING, LLC'S OBJECTION TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING AND GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Agile Lending, LLC ("Agile"), by and through its counsel, and respectfully objects to Debtors' Emergency Motion For Entry an Order Authorizing the Debtor's to Obtain Post-petition Financing and Granting Related Relief [Doc. # 5] (the "Motion") filed by debtors iCRYO Brands, LLC and iCRYO Franchise Systems, LLC (collectively, the "Debtors").   In support of this objection, Agile states as follows:

**I.**
**BACKGROUND FACTS**

1.      On or about January 12, 2026 (the "Petition Date"), Debtors filed voluntary petitions for relief under Chapter 11 of the United States Code, Sections 101 et seq., as amended (the "Bankruptcy Code").

2.      Prior to the Petition Date, on January 4, 2025, iCRYO Brands, LLC executed Business Loan, Guaranty, and Security Agreement (the "Agreement"), whereby Agile agreed to provide financing to iCRYO Brands, LLC for the use in its business operations.  A true and correct copy of said Agreement, including any applicable amendments, is attached hereto and incorporated

---

[1] The additional Debtor in this jointly administered Chapter 11 case is iCRYO Franchise Systems, LLC.

by reference for all purposes as Exhibit "A."

3.      Under the Exhibit A of the Agreement, iCRYO Brands, LLC granted Agile a security interest it its Accounts, Equipment, Inventory, contract rights or rights to payment of money, leases, licenses agreements, franchise agreements, General Intangibles, commercial tort claims, documents, instrument, chattel paper, cash, deposit accounts and other Collateral Accounts, all certificates of deposit, fixture, letters of credit rights, securities.[2]

4.      On, Agile perfected its security interest in the above referenced items by filing a UCC-1 Financing Statement with the Texas Secretary of State with filing No. 00230023637319. A true and correct copy of the UCC-1 Financing Statement is attached and incorporated herein as Exhibit "B."

5.      The indebtedness under the Agreement has not been repaid and Agile retains its perfected security interest in Debtors'' present and future accounts, assets, equipment, inventory, franchise agreements, proceeds, and general intangibles.

6.      As shown by the Payment History, as of November 20, 2025, after the consideration of all lawful offsets, payments, and credits, the amount due and owing under the Agreement is $1,968,117.30. A true and correct copy of the Payment History is attached hereto and incorporated herein as Exhibit "C."

7.      On January 21, 2026, Debtors filed the Motion, seeking to use cash collateral and provide adequate protection to secured creditors. While the Motion and Second Interim Order Authorizing the Debtors to Obtain Post-Petition Financing and Granting Related Relief (the "Second Interim Order") [Doc. #54] references that each prepetition secured creditor will maintain its liens to the same extent prior to the Petition Date, in reality, such safeguards do not adequately protect secured creditors who hold security interests in Debtors' cash collateral. Notably,

---

[2] Ex. A.

Paragraph 39 of the Motion seeks the use of all cash collateral as defined in section 363(a) of the bankruptcy code, which would necessarily include assets subject to Agile's perfected security interest, including present and future accounts, cash, deposit accounts, rights to payment, and general intangibles. Neither the Motion nor the Second Interim Order provides adequate protection with respect to Agile's perfected security interest in Debtor's cash collateral. Further, any use of cash collateral would be prejudicial to Agile.

## II.
## OBJECTION TO DEBTORS' MOTION

8.      Pursuant to 11 U.S.C. §§ 1107 and 1108, the Debtors remains in control of the operation of their business.

9.      Throughout the Motion, Debtors seek approval to use cash collateral, a portion or all of which may consist of assets, general intangibles, chattel paper, or present or future accounts subject to Agile's perfected security interest.  However, nothing in the Second Interim states that Agile's security interests will be adequately protected.

10.     Section 363(c)(2) of the bankruptcy code (the "Code") provides that the debtor in possession may not use cash collateral unless the secured party consents or the court, after notice and hearing, authorizes such use.  Additionally, section 363(e) further provides:

> Notwithstanding any other provision of this section, at any time, on the request of an entity that has an interest in the property used, sold, or leased, or proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.[3]

The burden of proof on the issue of adequate protection falls upon the Debtor.[4] **Agile does not consent to Debtors' use of cash collateral** on either an interim or final basis and objects to

---

[3] 11 U.S.C. § 363(e).
[4] 11 U.S.C. § 363(p)(1).

Debtors' Motion for the several reasons as stated below.

A. Agile Objects to Debtors' Motions on the Basis That, Despite Being Entitled to It, Neither the Motion or the Second Interim Order Provided Adequate Protection

11.     Agile objects to the Motion and Second Interim Order as neither provide adequate protection. For Agile to receive adequate protection, Debtors could provide any of the remedies identified in § 361. However, the Motion fails to provide Agile with (1) monthly cash payments, (2) replacement liens on unencumbered assets, or (3) granting other relief that equals the value of Agile's security interest. In reality, the Motion makes it nearly impossible for Debtors to provide a replacement lien as the DIP Lender was granted a continuing security interest in all of Debtors' current and later acquired assets.

B. Agile Objects to Debtors' Motion on the Basis That Debtors May Have Insufficient or No Equity to Provide Replacement Liens in Favor of Agile

12.     Debtors have not yet filed any schedules identifying the value of its assets.[5] However, Agile does not believe Debtor has sufficient equity in which to provide Agile with replacement liens. Debtors have the burden to establish such equity in a § 363 proceeding but has neither pled there is sufficient equity nor has provided any evidence it has equity relative to the debt owed to Agile in its Motion.  If the Debtors in fact have no equity, then Debtors cannot provide replacement liens to Agile – or any other secured creditor – and cannot adequately protect Agile's security interest in its cash collateral.

C. Agile Objects to Debtors' Motion on the Basis That Payments for Restructuring Professional and Expenses is Unreasonable and Unnecessary

13.     Agile further objects to the Motion because of the unnecessary and unreasonable fees attributed to Restructuring Professionals & Expenses. In the Motion, Debtors' have budgeted

---

[5] Acknowledging that the Court entered its Order Extending Tine for Debtors to File Schedules and Statement of Financial Affairs [Doc. #47].

for Lain Faulkner and Driver Stephenson to receive $70,000 and $30,000, respectively, on February 16, 2026. These expenditures have a dramatic effect on the Beginning Cash, as it plummets from $130,470 on February 16, 2026 to $29,901 on February 23, 2026. These proposed expenses are unreasonable and unnecessary, especially on an interim basis. Further, they will likely create great economic strain on the Debtors' business as shown through in dramatic decrease in available funds. Therefore, Agile objects to use of cash collateral as outlined in the Motion.

14.     Accordingly, Debtors could provide Agile with adequate protection under Section 361 by either: (1) making cash payment(s) to Agile; (2) providing Agile with additional or replacement liens that account for the decrease in the value of Agile's equity interest in the property; or, (3) grant such other relief that will result in Agile realizing the indubitable equivalent of Agile's interest in the property.[6]

15.     Debtors have not offered cash payments that are consistent with the Agreement's payment schedule.

16.     Debtors have also not established that sufficient equity exists in which to provide Agile with replacement liens. The Fifth Circuit conducted an extensive adequate protection analysis regarding the debtors' equity in *In re First S. Sav. Ass'n*, 820 F.2d 700, 711-14 (5th Cir. 1987), noting "[g]iven the fact that super priority financing displaces liens on which creditors have relied in extending credit, a court that is asked to authorize such financing must be ***particularly cautious*** when assessing whether the creditors so displaced are adequately protected."[7]  In *In re Energy Partners, Ltd.*, 409 B.R. 211, 236 (Bankr. S.D. Tex. 2009), the Court held that an application to pay professionals with cash collateral subject to prepetition liens must be denied for lack of adequate protection because the record had no evidence of adequate protection. The *In re*

---

[6] *See* 11 U.S.C. § 361.
[7] *In re First S. Sav. Ass'n*, 820 F.2d 700, 711-14 (5th Cir. 1987) (emphasis added).

*Energy Partners, Ltd*. Court did cite to the Tenth Circuit's § 364(d) adequate protection analysis in *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987) as prevailing authority for its adequate protection analysis.[8] Whether seeking to use cash collateral to pay professionals like in *In re Energy Partners, Ltd*. or to provide superpriority liens for DIP financing like in *In re O'Connor*, adequate protection of secured creditors is a question of fact to be decided based on the evidence in the record.

17.     Since Debtors have not filed their schedules, it is unclear if Debtors have sufficient equity in their unencumbered assets, if any, to grant replacement liens as adequate protection to Agile for Debtor's use of cash collateral. Through the Motion, Debtors only seek to allow secured creditors to maintain their prepetition status, which is wholly insufficient and does not offer any legitimate adequate protection to Agile. Therefore, Agile objects to the Motion.

## IV.
## RELIEF REQUESTED

18.     A portion of Agile's collateral may presently or in the very near future consist of cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents and the proceeds, products, offspring, rents or profits as contemplated by 11 U.S.C. § 363(a).

19.     Pursuant to 11 U.S.C. § 363(c)(2), the Debtors may not use, sell, or lease cash collateral unless Agile consents or the Court, after notice and a hearing, authorizes such use, sale or lease.

20.     For all of the foregoing reasons set forth in this objection, the Debtors' Motions seeking to pay certain expenses through cash collateral consisting of the anticipated income from its sell of its inventory is wholly inadequate in light of Agile's perfected security interest in cash

---

[8] 409 B.R. 211, 236 (Bankr. S.D. Tex. 2009).

collateral, and Agile seeks entry of an order denying the Debtor continued use of cash collateral on a further interim basis or final basis.

**WHEREFORE, ABOVE PREMISES CONSIDERED**, Agile respectfully requests that the Court:

a.      Deny the relief requested in the Motion;

b.      For such other and further relief to which Agile is entitled as this Court may deem just and proper.

**Respectfully submitted,**

**PADFIELD & STOUT, LLP**
100 Throckmorton Street, Suite 700
Fort Worth, Texas 76102
Phone: 817-338-1616
Fax: 817-338-1610

*/s/ Christopher V. Arisco*
Mark W. Stout
State Bar I.D. #24008096
mstout@padfieldstout.com
Christopher V. Arisco
State Bar I.D. #24064830
carisco@padfieldstout.com
Brandon J. Milligan
State Bar I.D. #24137049
bmilligan@padfieldstout.com

*Attorneys for Agile Lending, LLC*

## CERTIFICATE OF SERVICE

I certify that on Wednesday, February 18, 2026, a true and correct copy of the foregoing document was served by electronic mail via the Court's ECF system to all parties authorized to receive electronic notices.

*/s/ Christopher V. Arisco*
Christopher V. Arisco